## City of Chicago v. Henry Dickman.

1.   CROPS—*Measure of Damage for Destruction.*—Where one's crops are destroyed though the negligence of another, he is entitled to recover the value thereof at the, time of such destruction.   In arriving at this value, there may be taken into consideration the right to have the crops mature undisturbed, and to gather and market them.   Evidence as to the probable cost, including that of the use of the land, to bring the crops to the condition in which they were at the time of their destruction, is admissible as tending to show their then value; and evidence also as to what the reasonable probability is as to the maturity of such crops, and the amount of the same that would be matured, is admissible.

**Trespass on the Case.**—Damage to growing crops caused by filling up a ditch.   Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding.   Heard in the Branch Appellate Court at the October term, 1901.   Reversed and remanded.   Opinion filed December 16, 1902.   Rehearing denied January 6, 1903.

CHARLES M. WALKER, corporation counsel, and WILLIAM H. FITZGERALD, assistant corporation counsel, attorneys for appellant.

CARL STROEVER, attorney for appellee; BENJAMIN F. RICHOLSON, of counsel.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This was an action to recover damage alleged to have been occasioned by the negligence of the city of Chicago in filling up a ditch, in consequence of which appellee's land was flooded, and the crops growing thereon destroyed. There was a verdict and judgment for the plaintiff for $3,316.   Over the objections of the defendant appellee was permitted to show what the market value of such crops as were growing upon his land in the latter part of June, 1898, would, in a matured state, have been in the following October, November and December.   The flood by which appellee's growing crops were destroyed, occurred in the latter part of June.   According to his testimony, in the

spring of 1898, he seeded seven acres of Hungarian grass, four and a half acres of cucumbers, two acres of beets, one acre of potatoes, seven to eight acres of cabbage, and had put out about 100,000 cabbage plants. He had also planted four acres of corn.

At the time the flood came, the cabbage plants were above the ground, and the Hungarian grass was up; so also were the cucumbers, the corn and the beets. The cucumbers and the beets were from four to six inches high, and the corn eight to ten inches; the potatoes three to four inches above the ground.

Appellee testified that after the flood in the latter part of June, when the water ran off from the ground, every plant was rotted to the surface of the ground; that they were all lying down, and none grew up again, except a little of the Hungarian grass, " two strips straight through the field about three feet wide." Over objection, he was permitted to state that these two strips of Hungarian grass " showed him afterward what a nice crop of Hungarian grass he would have had if it had grown up." He was also permitted to testify that other crops in that neighborhood, not destroyed by the June flood, matured in good condition.

Appellee testified that at the time of the flood all the work necessary to be done for the maturing of his crops had been performed except a little weeding; otherwise all that was necessary for their maturity was to permit them to grow. He was then permitted to testify what such weeding would have cost him, and what the expense to him of gathering and marketing the crop would have been. Also the time it would have taken to market the crop. He was permitted, over the objection of the defendant, to testify what the fair cash market value of the matured crops would have been in the market in October, November and December of that year, and that from this market value there should be deducted $150 for marketing the crop.

If appellee's crops were destroyed by the negligence of the city, he was entitled to recover the value thereof at the

City of Chicago v. Dickman.

time of such destruction. In arriving at this value, there could be taken into consideration the right he had to have the crops mature undisturbed by any act of the city, and to gather and market them.

It is quite true, as is urged, that there generally is not what is commonly known as a market value for growing crops. Nevertheless it does not follow that appellee was entitled to receive, not the value of his crops at the time of their destruction, but at a subsequent time, nor that the ordinary rule for the ascertainment of the value of articles is to be departed from in such a case as the present, any more than it follows that because an article has not what is known as a market value, therefore one wrongfully deprived of such article can recover nothing therefor.

The value of articles depends upon the law of supply and demand; that is regulated by the industry, the desires of mankind, and the operation of the forces of nature.

We do not understand that appellee denies that the damage he is entitled to recover is to be determined by an ascertainment of the value of his crops at the time of their destruction. That, he insists, is that such value is to be determined, not by the conditions existing at the time of such destruction, but by that which thereafter happened; not as a result of such destruction, but of causes over which neither he nor appellant had any control, or were in anywise responsible. Evidence as to the reasonable cost, including that of the use of the land, to bring the crops to the condition in which they were at the time of their destruction, was admissible as tending to show their then value; and evidence also as to what the reasonable probability was as to the maturity of such crops, the amount of the same that would be matured, and the probable market value of the same when matured, was admissible, because such evidence would have tended to show what the value of the crops was when destroyed.

As before stated, the reasonable probability as to the maturity of such crops, and the quantity of the same when matured, was admissible. That having been shown, and

the trial having occurred some years after the destruction of the crop, it would not have been proper to have admitted upon the trial, evidence showing that a week or two after the destruction of the crop, all the crops in the neighborhood where these were growing, were destroyed by drought, a simoon, a flood or a tempest, over which neither appellant, appellee nor any other person had any control.

So, too, the market price in October, of matured crops such as, in an immature condition, were upon appellee's land the latter part of June, was not admissible, because such market price in October was produced by a multitude of causes over which neither of the parties to this litigation had any control, or were in any way or wise responsible for, and was a matter concerning which, in June, there could be opinions, but not certainty.

Had appellee, upon the trial, shown what the value of his crops was at the time of their destruction, such value not being determined by the actual state of the market in the following October, but by what, in June, was reasonably probable as to maturity and value that would exist in the following October, appellant would not have been permitted to show that, owing to a great falling off in the demand for such crops, or an abundant supply of such articles, the market price in October was much less than, in June, it was reasonably probable it would be in the following October.

That the rule for ascertaining the value of destroyed crops is as we have stated, we regard as abundantly established in this state by Green v. Williams, 45 Ill. 206; Cilley v. Hawkins, 48 Ill. 308; City v. Huenerbein, 85 Ill. 594; K. & S. R. R. Co. v. Horan, 17 Ill. App. 650; and that it is the rule generally prevailing we regard as shown by Reiger v. Worth Company, 52 L. R. A. 362; Roberts v. Cole, 82 N. C. 292; Sedgwick on Damages, sections 937 and 942.

The citation by appellee from Sutherland on Damages, Vol. 1, page 194, is not sustained by any of the authorities there referred to, except the case of People's Ice Company v. Steamer " Excelsior," 44 Mich. 229. The statement

there made on page 237; that "the owner of the growing crops would not be limited in his recovery to the value thereof at the time of their destruction, nor to the fair rental value of the lands," we do not regard as even claimed by appellee to be the rule; nor can we assent to the further expression of opinion in that case, that if suit were brought and the case tried at once, the rule for ascertaining the damage to which the owner of the crops was entitled, would be variant from the rule to be followed in case the suit was not tried until a very considerable time after the destruction; nor do we think it follows, as is indicated in that case, that to allow evidence of things happening after the destruction of the crop to be shown for the purpose of determining its value, would be less favorable to a wrong-doer than if the evidence were confined to that known and reasonably probable at the time of the destruction.

That which we have said concerning the testimony as to the market value of the crops in October, is applicable to testimony that in the neighborhood in which these crops were, similar crops matured well in the season of 1898. The value of the destroyed crops is not to be determined by that which, after such destruction, actually took place as to other crops growing in the same neighborhood, but by that which was reasonably probable at the time of the destruction of appellee's crops.

The judgment of the Superior Court is reversed and the cause remanded.